## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**FRED V. BEEBE, ET AL.**                                     CIVIL ACTION

**VERSUS**                                                    No. 22-4518

**ILLINOIS NATIONAL INSURANCE**                               SECTION I
**COMPANY**

## ORDER AND REASONS

Before the Court are three motions to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6) filed by Illinois National Insurance Company ("Illinois National").

Illinois National requests that the Court dismiss the complaint filed by plaintiffs Fred

V. Beebe ("Beebe") and Ashton Ryan, Jr. ("Ryan") (collectively, "plaintiffs"),[1] the

complaint in intervention filed by John F. French, Charles C. Teamer, Sr, William

Carrouche, Stephen Petagna, James C. Roddy, Leon Giorgio, Jr., Herbert Anderson,

John C. Calhoun, Lawrence Blake Jones, William D. Aaron, Jr., Joseph F. Toomy, R.

Michael Wilkinson, Shivan Govindan, Grish Roy Pandit, Hermann Moyse, III, and

Dale B. Atkins (collectively, "Independent Directors"),[2] and the amended complaint

in intervention filed by the Independent Directors.[3] Also before the Court are three

motions for partial summary judgment, filed by Beebe,[4] Ryan,[5] and the Independent

Directors,[6] respectively. For the reasons below, the Court denies the motion to

---

[1] R. Doc. No. 10.
[2] R. Doc. No. 34.
[3] R. Doc. No. 57.
[4] R. Doc. No. 40.
[5] R. Doc. No. 42.
[6] R. Doc. No. 49.

dismiss the complaint and the motion to dismiss the amended complaint-in-intervention, dismisses the motion to dismiss the original complaint-in-intervention as moot, and denies the motions for summary judgment.

## I.    BACKGROUND

This matter arises from the demise of First NBC Bank ("First NBC"). First NBC was closed by the Louisiana Office of Financial Institutions on April 28, 2017, and put into receivership under the authority of the Federal Deposit Insurance Corporation ("FDIC"). Ryan was formerly the president and CEO of First NBC, and Beebe was its senior vice president.[7]

As relevant here, Illinois National issued an "Excess Edge policy" ("Illinois National policy") to First NBC that provided $15,000,000 in excess coverage following an underlying Directors and Officers ("D&O") policy issued to First NBC by Zurich American Insurance Company ("Zurich").[8] The Illinois National policy was explicitly issued "in reliance upon the completeness and accuracy of the applications, warranties, [and] statements . . . submitted for [the] policy[.]"[9] The warranty relevant here applies only to the $5,000,000 in coverage in excess of $10,000,000 under the Illinois National policy. It provides:

> "[A]fter inquiry of all the directors and officers of First NBC Holding Company and its subsidiaries (if any), the undersigned authorized officer(s) of FNBC hereby represents and warrants on behalf of himself/herself, First NBC Bank Holding Company, any subsidiary thereof and all such directors or officers that:

---

[7] R. Doc. No. 1, ¶ 7.
[8] *Id.* ¶ 4.
[9] R. Doc. No. 1-1, at 2.

(a) There has not been nor is there now pending any claim(s), suit(s), or action(s) (including but not limited to any investigation) against any person or entity proposed for insurance under the policy referenced above, except as follows: (Attach complete details. If no such claims, check here "none" X.)

(b) No person or entity proposed for insurance under the policy referenced above has knowledge or information of any act, error or omission which might give rise to a claim(s), suit(s), or action(s) under such proposed policy, except as follows: (Attach complete details. If they have no such knowledge or information, check here "none": X.)

It is further understood and agreed that if such claim(s), suit(s), action(s), knowledge or information exists, then such claim(s), suit(s) or action(s) and any claim(s), suit(s) or action(s) arising therefrom or arising from such knowledge or information is excluded from coverage under the proposed policy referenced above.[10]

Ryan signed this warranty on June 9, 2015.[11]

In July 2020, Ryan, among other First NBC officers, was indicted by federal authorities on various bank fraud charges related to conduct taking place between approximately 2006 and 2017.[12] Beebe was added as a defendant in that case via a superseding indictment on January 29, 2021.[13] Zurich's policy limits were exhausted in 2021, and Illinois National began paying defense costs for the insureds, including Ryan and Beebe.[14]

On October 11, 2021, Illinois National Informed Ryan and Beebe that "Illinois National has determined that the Warranty was false when provided and acts as a bar to coverage for all Insureds under the $5 million, excess of $10 million, portion of

---

[10] R. Doc. No. 1-3, at 4–5.

[11] *Id.*

[12] R. Doc. No. 1, ¶ 10; *United States v. Ryan, et al.*, E.D. La. Case No. 20-65.

[13] R. Doc. No. 1, ¶ 10.

[14] *Id.* ¶ 11.

the $15 million 2015/16 Excess Policy."[15] Illinois National therefore ceased payments for losses exceeding $10 million and made no payments under the remaining $5 million of its policy, and, as a result, prevented the insured from recovering payments under the excess insurance provided by other carriers.[16]

While the criminal case was pending, certain insureds—excluding Ryan and Beebe—filed a lawsuit against Illinois National, among other insurance companies, seeking a declaratory judgment that the warranty defense is invalid.[17] Illinois National subsequently filed a separate lawsuit in this District against Ryan and Beebe, among other insureds, seeking a declaratory judgment that the warranty made by Ryan in connection with the policy was false, that the warranty was made by all directors and officers of First NBC or any subsidiary thereof, and that knowledge or information possessed by any director or officer of First NBC or any of its subsidiaries rendered the warranty false and defeats coverage for all insureds.[18] The Court consolidated the two matters on August 17, 2022.[19] Hereinafter, these consolidated matters will be referred to as the "coverage litigation."

---

[15] *Id.* ¶ 12.

[16] *Id.*

[17] E.D. La. Case No. 22-09, R. Doc. No. 1.

[18] E.D. La. Case No. 22-2070, R. Doc. No. 1.

[19] E.D. La. Case No. 22-09 c/w 22-2070, R. Doc. No. 188. A separate case, filed by the FDIC as receiver for First NBC against various individuals affiliated with First NBC, including Ryan, and certain insurers, is also pending before this Court. *FDIC v. Ryan, et al.*, E.D. La. Case No. 20-1253. In that action, FDIC seeks "to recover over $165 million in losses [First NBC] suffered on dozens of loans that the individual Defendants" allegedly caused the bank "to make to financially distressed borrowers." E.D. La. Case No. 20-1253, R. Doc. No. 196, ¶ 2. FDIC also seeks to recover losses directly from certain insurance companies, including Illinois National, that provided

Just before the coverage litigation cases were consolidated, the United States sought leave to intervene in both cases due to the ongoing criminal case against Ryan and Beebe, among others.[20] The government also sought a stay of the coverage litigation due to the pending criminal case. The Court granted the government's motion and stayed the consolidated cases, reserving the parties' rights to move to reopen those cases within thirty days of entry of final judgment in the criminal case.[21]

On November 15, 2022, while the criminal litigation was ongoing and the consolidated cases were stayed, Ryan and Beebe filed the above-captioned lawsuit. As in the coverage litigation, the litigants in this matter seek a judicial determination as to the legality of the warranty defense. The complaint alleges that Illinois National breached the insurance contract, that its failure to pay all defense costs is a bad-faith insurance practice entitling plaintiffs to fees and penalties, and it also requests a preliminary injunction ordering Illinois National to continue paying defense costs "until the Court makes a final ruling on the merits."[22]

On December 30, 2022, the Independent Directors—who are also covered under the Illinois National policy—filed a motion for leave to file a complaint-in-intervention.[23] The U.S. Magistrate Judge assigned to this matter granted the motion

---

D&O insurance during the relevant times. *Id.* ¶ 7. The FDIC case is not consolidated with the coverage litigation.

[20] E.D. La. Case No. 22-09, R. Doc. Nos. 187, 189.

[21] E.D. La. Case No. 22-09 c/w 22-2070, R. Doc. No. 231. The government also intervened in the FDIC litigation, which was likewise stayed but is now reopened.

[22] R. Doc. No. 1, ¶¶ 31–35.

[23] R. Doc. No. 17.

on January 13, 2023.[24] The complaint-in-intervention, like Ryan and Beebes' complaint, alleges that the warranty defense is legally inadequate. It seeks declaratory relief to that effect, and alleges that Illinois National has acted in bad faith.[25] Illinois National filed a motion to dismiss the complaint-in-intervention,[26] and the Independent Directors thereafter filed an amended complaint-in-intervention.[27] Illinois National has filed a motion to dismiss the amended complaint-in-intervention, which is largely identical to the original complaint-in-intervention, except that it also specifically alleges that Illinois National breached the insurance contract and alleges entitlement "to an order requiring Illinois National to pay [the Independent Directors'] defense costs . . . unless and until a final and non-appealable judgment is rendered in Illinois National's favor."[28]

After a jury trial in February of 2023, Ryan was convicted on all counts and Beebe was acquitted on all counts.[29] The above-captioned civil matter was thereafter transferred to the undersigned because of relatedness with the consolidated and stayed civil matters already pending before the undersigned.[30]

In the instant motions, Illinois National seeks dismissal of the complaint, the complaint-in-intervention,[31] and the amended complaint-in-intervention on the

---

[24] R. Doc. No. 32.

[25] R. Doc. No. 17-4.

[26] R. Doc. No. 34.

[27] R. Doc. No. 41.

[28] *Id.*

[29] E.D. La. Case No. 20-65, R. Doc. Nos. 948, 950.

[30] R. Doc. No. 45.

[31] Because the Independent Directors' original complaint-in-intervention is no longer the operative pleading, the Court will dismiss the motion to dismiss the original

grounds that the above-captioned matter is impermissibly duplicative of the consolidated coverage litigation, that the Louisiana bad-faith insurance statute pursuant to which Ryan and Beebe have asserted claims is inapplicable to this matter, and that Beebe and Ryan have failed to allege facts supporting a claim pursuant to that statute.[32] In their motions for partial summary judgment, Beebe, Ryan, and the Independent Directors seek an order from this Court stating that Illinois National breached the insurance contract and that Illinois National acted in bad faith.

## II.    STANDARD OF LAW

### a.  Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant

---

complaint-in-intervention as moot; however, the Court notes that the legal arguments raised as to both complaints-in-intervention are identical.

[32] As discussed below, the Independent Directors did not allege claims pursuant to that statute.

has acted unlawfully." *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (citation omitted) (internal quotation marks omitted).

"[T]he face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of *each element* of the plaintiffs' claim." *Hi-Tech Elec., Inc v. T&B Constr. & Elec. Servs., Inc.*, No. 15-3034, 2017 WL 615414, at *2 (E.D. La. Feb. 15, 2017) (Vance, J.) (emphasis added) (citing *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 255–57 (5th Cir. 2009)). A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citation and internal quotations omitted). It "must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal quotations omitted).

In considering a motion to dismiss, a court views the complaint "in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

### b. Motion for Summary Judgment

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its

8

motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the nonmovant fails to meet their burden of showing a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075–76.

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be

9

presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted). The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *See Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255.

## III.   ANALYSIS

### a. Motions to Dismiss

#### i.   Duplicative Lawsuits

"It is well established that a plaintiff is generally required to 'bring all claims arising out of a common set of facts in a single lawsuit, and federal district courts have discretion to enforce that requirement as necessary 'to avoid duplicative litigation.'" *Life Church of Oak Grove, Inc. v. GuideOne Mut. Ins. Co.*, No. 18-1167, 2019 WL 4803284, at *2 (W.D. La. Sept. 30, 2019) (quoting *Elgin v. Dept. of Treasury*, 567 U.S. 1, 34 (2012)) (further citations omitted). "'When a plaintiff files a second complaint alleging the same cause of action as a prior, pending, related action, the second complaint may be dismissed.'" *Id.* (quoting *Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985)) (emphasis omitted). "When a district court becomes aware that the two actions begun by a plaintiff are virtually identical, the second complaint may be dismissed without prejudice or stayed until judgment is entered in the first." *Extex*

*Prod., Inc. v. Mid Continent Cas. Co.*, No. 07-760, 2008 WL 191650, at *2 (M.D. La. Jan. 22, 2008).

"District courts are accorded a great deal of latitude and discretion in determining whether one action is duplicative of another, but generally, a suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." *Smith v. Saint Paul Travelers Ins. Co.*, No. 19-1454, 2019 WL 1756297, at *2 (E.D. La. Apr. 2, 2019) (Douglas, M.J.) (quoting *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993)); *see also Braddy v. Infinity Assurance Ins. Co.*, No. 15-119, 2016 WL 1446202, at *1 (M.D. Fla. Apr. 11, 2016) ("Duplicative claims are those that stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available." (quotation and citation omitted)).

The plaintiffs and Independent Directors argue that the fact that different remedies are sought in this matter and the other matter renders them non-duplicative.[33] They argue that "[t]he injunctive relief sought in this case does not require [the] Court to reach the merits of the coverage dispute," but rather "simply asks [the] Court to recognize that the subject policy and relevant policy considerations require Illinois National to continue paying the Independent Directors' defense costs [and those of plaintiffs] unless and until a court determines that [the] warranty defense is valid in the Coverage Litigation."[34]

---

[33] R. Doc. No. 36, at 8.
[34] *Id.* at 9.

The Court agrees that the different relief requested in the two lawsuits makes the lawsuits not entirely duplicative. *Smith*, 2019 WL 1756297, at *2. Because the coverage litigation is no longer stayed, it is no longer true that "there is no other avenue to obtain the relief sought herein."[35] However, to the extent that the plaintiffs and Independent Directors still plan to seek an injunction in the above-captioned case,[36] this case is distinct from the coverage litigation, despite the fact that the ultimate legal questions are essentially the same.[37] Accordingly, based on the different relief requested in the lawsuits, the Court will deny the instant motions to dismiss. *See id.* (noting that the district court has "a great deal of latitude and discretion in determining whether one action is duplicative of another").

## ii.    Section 1892 Claims

Illinois National next argues that La. R.S. § 22:1892, which provides for recovery of penalties and fees against insurers, applies only to property damage claims, not to the D&O policy at issue here. Plaintiffs' complaint seeks fees and

---

[35] *Id.*

[36] Though Illinois National's motions to dismiss make substantive arguments as to the plaintiffs' and the Independent Directors' request for a preliminary injunction, neither the plaintiffs nor the Independent Directors have yet briefed their entitlement to such relief. The Court therefore makes no ruling as to the requested injunctive relief at this time. *See* R. Doc. Nos. 11, at 7 (Beebe's opposition to the motion to dismiss, arguing that Illinois National's briefing as to entitlement to a preliminary injunction is premature, and stating that he "will request [the injunction] in this case at the appropriate time and in the appropriate manner").

[37] The Court also notes that there are certain parties, largely other insurance companies, named as defendants in the coverage litigation that are not parties to the instant matter.

penalties pursuant to this statute.[38] Illinois National further argues that this Court should dismiss plaintiffs' claims pursuant to this statute because they have failed to allege facts giving rise to a case or controversy, depriving the Court of jurisdiction. The Court addresses the latter argument first.

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Taylor v. Denka Performance Elastomer LLC*, 332 F. Supp. 3d 1039, 1049 (E.D. La. 2018) (Feldman, J.) (quotation and citation omitted). In order to bring an issue to federal court, the party invoking federal jurisdiction must show both that they have standing to sue and that the issue is ripe for adjudication. *Id.* Standing and ripeness are separate but related inquiries. *Texas v. United Sates*, 497 F.3d 491, 496 (5th Cir. 2007). "In general terms, standing is concerned with whether a proper party is bringing suit, while ripeness is concerned with whether the suit is being brought at the proper time." *Id.* (citation omitted).

Illinois National appears to challenge the ripeness of this lawsuit.[39] "A case or controversy 'must be ripe for decision, meaning that it must not be premature or speculative.'" *Taylor*, 332 F. Supp. 3d at 1052 (quoting *Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 922 (5th Cir. 2017) (further citation omitted)). "The two key considerations for a ripeness determination are the fitness of the issues for judicial decision and the hardship to the parties of withholding court

---

[38] R. Doc. No. 1, ¶¶ 29–30. The Independent Directors' complaint-in-intervention seeks fees and penalties pursuant to a different Louisiana statute, La. R.S. § 22:1973. Illinois National does not appear to challenge that claim in the instant motions.
[39] *See* R. Doc. No. 10-1, at 10–11.

consideration." *Id.* (quotation and citation omitted). "If the purported injury is contingent on future events that may not occur as anticipated, or indeed may not occur at all, the claim is not ripe for adjudication." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). However, "[w]hile standing to sue is assessed at the time of filing the complaint, in determining ripeness, a court may consider events that occurred after the filing of the complaint." *Regions Ins., Inc. v. Ace Prop. & Cas. Ins. Co.*, 80 F. Supp. 3d 730, 733 (M.D. La. 2015) (quoting *Roman Catholic Diocese of Dallas v. Sebelius*, 927 F. Supp. 2d 406, 424 (N.D. Tex. 2013)).

Louisiana Revised Statute § 1892 provides, in relevant part, that "[a]ll insurers issuing any type of contract, other than [exemptions not relevant here] shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest." La. R.S.  § 1892(A)(1). It further provides that "failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor . . . when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a [monetary] penalty[.]" *Id.* § 1892(B)(1)(a).

At the time the complaint was filed, Illinois National had not yet ceased its payments under the policy—it had merely informed the insureds that it would not pay the portion of the policy that was issued subject to the warranty. However, since the filing of the complaint, Illinois National has in fact ceased payment. Accordingly, considering facts arising after the filing of the complaint, the Court concludes this claim is ripe for adjudication. *Regions Ins., Inc.*, 80 F. Supp. 3d at 733.

14

As noted, Illinois National also argues that § 1892, pursuant to which Beebe and Ryan allege their bad faith claims, does not apply to this case because the policy at issue is not a property or casualty insurance policy. This question of statutory interpretation is governed by Louisiana law. The Court starts with the language of the statute, and "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." *Gloria's Ranch, LLC v. Tauren Expl., Inc.*, 252 So.3d 431, 445 (La. 2018) (quotation and citation omitted).

As noted, § 1892 states that "*[a]ll insurers issuing any type of contract . . .* shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. La. R.S. § 1892(A)(1) (emphasis added). The statute specifically does not apply to life, health, or accident insurance policies, but no specific exemption is made for D&O policies. *Id.* Accordingly, nothing in the text of the statute prevents its application to this matter.[40]

Illinois National points out that the statute appears in a Part of the Louisiana Insurance Code entitled "Property and Casualty Insurance Claims Payments." The placement of a statute within the code can elucidate ambiguities. *Anderson v. Oschner*

---

[40] Illinois National emphasizes that certain subsections of the statute refer specifically to "property damage claims." R. Doc. No. 10-1, at 13. However, it ignores that subsection (A)(1) of the statute requires that "[a]ll insurers issuing any type of contract" must pay claims within thirty days of receipt of proof of loss.

*Health Sys.*, 172 So.3d 579, 581 (La. 2014) ("In ascertaining the true meaning of a word, phrase, or section of a statute, the act as a whole must be considered. . . . When doubt exists as to the proper interpretation of a statute, the title or preamble may be used to determine legislative intent." (citation omitted)). The language at issue here is not ambiguous, and the Court finds that the statute's placement in the code does not alter its plain meaning.[41] Accordingly, the Court finds that plaintiffs' claims pursuant to § 1892 should not be dismissed on this basis.

Having found that the complaint and amended complaint-in-intervention should not be dismissed pursuant to Illinois Nationals' motions, the Court proceeds to the motions for summary judgment.

_____

[41] The parties have not pointed to, and the Court has not identified, any cases squarely answering the question of whether § 1892 applies outside the context of property and casualty insurance claims. Illinois National cites *Katie Realty, Ltd. v. La. Citizens Prop. Ins. Co.*, wherein the Louisiana Supreme Court, interpreting the term "proof of loss," wrote that the term "claim" in the statute "refers to an insurance claim, either property or casualty." 100 So.3d 324, 331 (2012). This case does not address the issue at hand. Beebe and Ryan cite cases involving non–property and casualty insurance policies in which courts have discussed the statute, but none specifically hold that the statute is applicable to such policies. *E.g.*, *La. CNI, LLC v. Landmark Am. Ins. Co.*, No. 06-112, 2007 WL 9706524, at *13 (M.D. La. June 26, 2007) (discussing the statute as applied to a D&O policy and denying summary judgment due to factual issues). The Court notes that the cases cited by Ryan and Beebe all applied the version of the statute in effect prior to the Louisiana legislature's 2008 renumbering of the Insurance Code, which transferred § 1892 from a portion of the code entitled "The Insurance Contract" to a portion of the code entitled "Property and Casualty Insurance Claims." 2008 La. Sess. Law Serv. Act 415 (S.B. 335) (West). In renumbering the statutes, however, the legislature specifically stated its intent to "redesignate the current provisions . . . without changing the substance of the provisions." *Id.*

### b. Motions for Summary Judgment

Beebe, Ryan, and the Independent Directors seek summary judgment as to their breach of contract and bad faith claims. They assert that Illinois National breached the insurance contract by refusing to pay the amount of the policy subject to the warranty, and that such refusal was a bad faith insurance practice prohibited by Louisiana law.

The three motions for summary make identical legal arguments, and all three rely heavily on *Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, 600 F.3d 562 (5th Cir. 2010). In that case, certain executives facing criminal charges related to an alleged Ponzi scheme sought coverage under a D&O insurance policy. *Id.* at 566. The insurers "initially agreed to advance defense costs . . . but expressly reserved the right to deny coverage at any time based on the policy's terms, including exclusions for fraud and money laundering." *Id.* The money laundering exclusion in the policy barred "coverage for loss (including defense costs) resulting from any claim 'arising directly or indirectly as a result of or in connection with any act or acts (or alleged act or acts) of Money Laundering,'" but "provide[d] for qualified reimbursement of defense costs, coupled with the ability to claw back reimbursed funds from the insureds" in certain circumstances. *Id.* at 567. The policy provided that "[n]otwithstanding the [money laundering] [e]xclusion, [the insurers] shall pay Costs, Charges and Expenses in the event of an alleged act or alleged acts until such time that it is determined that the alleged act or alleged acts did in fact occur." *Id.*

The insurers later denied coverage to the executives as of the date of another executive's guilty plea "because [the insurers] had determined, based on the evidence available to them up to that point, that [m]oney [l]aundering, as defined by the policy, had occurred." *Id.* at 568. The executives then filed a civil lawsuit against the insurers "seeking damages, a declaration that their defense costs must be reimbursed under the D&O Policy, and a preliminary injunction ordering the underwriters to pay their defense costs until a final judgment on the merits of the coverage dispute." *Id.* The district court found that the money laundering exclusion likely would not preclude coverage and enjoined the insurers from withholding payment. *Id.*

Interpreting the insurance contract, and applying Texas law, the Fifth Circuit held that the policy's requirement that the insurers continue paying until "it is determined that [money laundering] did in fact occur" required "a judicial act." *Id.* at 574. The court rejected the insurers' argument that the insurers were entitled to make the requisite "determination in fact" unilaterally. *Id.* In reaching this conclusion, the court relied on dictionary definitions of "determination," the fact that the policy did not explicitly state that the determination was to be made by the insurers, and the principle that such an exclusion should be stated explicitly. *Id.* at 570.

In so holding, the Fifth Circuit compared the "determined . . . in fact" language to another exclusion, which applied only after a "final adjudication." The court held that the "determined in fact" language meant that the decision of whether costs would be covered had to be determined "in a parallel and independent proceeding" as

18

opposed to "in the criminal or [separate civil] SEC actions." *Id.* at 573." In contrast, it concluded that "[w]hen a D&O policy requires a 'final adjudication' to trigger an exclusion, courts have consistently held that the adjudication must occur in the underlying D&O proceeding, rather than in a parallel coverage action or other lawsuit." *Id.* at 572 (quotation and citation omitted).

Beebe, Ryan, and the Independent Directors, relying on *Pendergest-Holt*, argue that Illinois National breached the insurance policy by "unilaterally ceasing payment before reaching the full limits of its policy for which it has sought but not yet obtained a judicial determination."[42] But, in contrast to the policy in *Pendergest-Holt*, there is nothing in the policy or warranty that required any "determination in fact" or "final adjudication" be made as to the falsity of the warranty. Indeed, the warranty simply provided that "if such claim(s), suit(s), action(s), knowledge or information *exists*, then such claim(s), suit(s), or action(s) and any claim(s), suit(s), or action(s) arising therefrom or arising from such knowledge or information is excluded from coverage[.]"[43] It requires neither a determination in fact nor a final adjudication. This policy language is in stark contrast to that at issue in *Pendergest-Holt*, and renders the movants' reliance on that case unavailing.[44]

---

[42] R. Doc. No. 40-1, at 6.

[43] R. Doc. No. 1-3, at 4–5 (emphasis added).

[44] The movants' reliance on *In re WorldCom, Inc. Securities Litigation*, 354 F. supp. 2d 455 (S.D.N.Y. 2005) fares no better. In that case, the insurer asserted that it did not need to pay defense costs pursuant to a D&O policy that required such payments because "the policies were issued in reliance on WorldCom's false financial statements and were therefore properly rescinded and are void *ab initio*." *Id.* at 462. Applying New York contract law, the court wrote that, while "an insurer may avoid an insurance contract if the insured made a false statement of fact as an inducement

Beebe, Ryan, and the Independent Directors assert that *Pendergest-Holt* stands for the proposition that an insurer's right to make a unilateral factual determination resulting in cessation of payments must always be expressly stated in the policy.[45] The Court does not read *Pendergest-Holt* so broadly. The court in that case was faced with ambiguous policy language, because the policy at issue did not define what "determination in fact" meant. Indeed, the Fifth Circuit specifically noted that the "neither [party's] interpretation [of the term] was unreasonable." *Id.* at 571. Confronted with two plausible interpretations, the Court adopted the interpretation that favored the insured.

Pursuant to Louisiana law,[46] "[if] an insurance contract is clear and unambiguous and does not lead to absurd consequences, the court shall apply the ordinary meaning of the contractual language." *Q Clothier New Orleans LLC v. Twin City Fire Ins. Co.*, 535 F. Supp. 3d 574, 581 (E.D. La. 2021) (Lemelle, J.) (quotation and citation omitted). Ambiguities are to be resolved in favor of the insured, but, in the absence of ambiguity, "the court lacks authority to alter the terms of [the] insurance contract[ ]." *Id.* (quotation and citation omitted). Neither plaintiffs nor the Independent Directors have pointed to any ambiguous policy language, much less any explicit language supporting the proposition that a judicial determination of any kind

---

to making the contract and the misrepresentation was material," the "contract of insurance remains in effect and the duty to pay defense costs is enforceable" until the issue of recission is adjudicated. *Id.* at 465. This case is inapposite because Illinois National has not attempted to rescind the insurance contract. Instead, it seeks to enforce the terms of the warranty.

[45] *E.g.*, R. Doc. No. 54, at 4.

[46] The Court notes that *Pendergest-Holt* applied Texas law, not Louisiana law.

was required to trigger the warranty exclusion. Accordingly, the Court finds that they have not carried their burden to show that they are entitled to summary judgment as to their breach of contract claims. *Celotex*, 477 U.S. at 323.

Because the movants have failed to establish that summary judgment is appropriate as to the breach of contract claims, their motion as to the bad faith claims must fail also. *Q Clothier*, 535 F. Supp. 3d at 588 ("[W]hen a breach of insurance contract fails, a bad faith claim shall likewise fail."). Accordingly, the motions for summary judgment will be denied as to the bad faith claims.

## IV.   CONCLUSION

For the reasons stated herein,

**IT IS ORDERED** that the motions[47] to dismiss the complaint and the amended complaint-in-intervention are **DENIED**.

**IT IS FURTHER ORDERED** that the motion[48] to dismiss the original complaint-in-intervention is **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that the motions[49] for summary judgment are **DENIED**.

New Orleans, Louisiana, July 13, 2023.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[47] R. Doc. Nos. 10, 57.
[48] R. Doc. No. 34.
[49] R. Doc. No. 40, 42, 49.